[Cite as *Sovern v. Sovern*, 2016-Ohio-7542.]

**IN THE COURT OF APPEALS OF OHIO**
**THIRD APPELLATE DISTRICT**
**UNION COUNTY**

JASON SOVERN,

      PLAINTIFF-APPELLEE,                CASE NO.  14-16-09

      v.

KINSEY E. SOVERN,                     **O P I N I O N**

      DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Domestic Relations Division
Trial Court No. 14-DR-0192

**Judgment Affirmed**

**Date of Decision:   October 31, 2016**

**APPEARANCES:**

    *Heather R. Gall* for Appellant

    *John C. Ruiz-Bueno* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Kinsey E. Sovern ("Kinsey"), appeals the March 15, 2016 judgment entry of the Union County Court of Common Pleas, Domestic Relations Division, granting divorce from plaintiff-appellee, Jason Sovern ("Jason"). On appeal, Kinsey challenges the trial court's: (1) allocation of parental rights and responsibilities; (2) child-and-spousal-support determinations; and (3) division of the parties' assets and liabilities. For the reasons that follow, we affirm.

{¶2} Jason and Kinsey were married on July 30, 2006. (Doc. No. 2). One child, R.S., was born as issue of this marriage. (*Id.*). Jason filed a complaint for divorce on November 13, 2014. (*Id.*). Jason filed motions that same day requesting that the trial court issue ex parte orders: (1) granting a temporary restraining order against Kinsey; (2) granting Jason temporary custody of R.S.; (3) ordering Kinsey to pay Jason temporary child support for R.S.; and (4) ordering Kinsey to pay Jason temporary spousal support. (Doc. Nos. 3, 4). The trial court issued an ex parte mutual temporary restraining order on November 13, 2014. (Doc. No. 9).[1] On December 1, 2014, Jason filed a motion requesting that the trial court order Kinsey to show cause for violating the temporary restraining order. (Doc. No. 15). On December 1, 2014, Jason filed a motion for exclusive use of the marital residence. (Doc. No. 16).

---

[1] The trial court issued a second ex parte mutual temporary restraining order when Kinsey filed her answer on December 8, 2014. (Doc. No. 31).

{¶3} Kinsey filed her answer on December 8, 2014. (Doc. No. 22). That same day, she filed memorandums in response to Jason's motions to show cause for violating the mutual temporary restraining order and for exclusive use of the marital residence. (Doc. Nos. 19, 20). Kinsey filed a motion on December 8, 2014 requesting that the trial court issue ex parte orders: (1) granting Kinsey temporary custody of R.S.; and (2) ordering Jason to pay Kinsey temporary child support for R.S. (Doc. No. 24).

{¶4} On December 22, 2014, Jason filed a summary of his previous motions and a motion for psychological evaluations of both parties. (Doc. Nos. 37, 38).

{¶5} After a hearing on December 22, 2015, the trial court's magistrate, at the partial agreement of the parties, ordered on January 5, 2015: (1) shared parenting and a parenting-time schedule for R.S.; (2) Jason to have exclusive use of the marital residence; (3) neither Jason nor Kinsey to remove R.S. from Ohio; (4) Jason and Kinsey to "consult and cooperate on all matters relating to the health, welfare, and care of [R.S.]," and Jason to maintain health insurance for R.S.; and (5) Jason and Kinsey to submit to psychological evaluations. (Doc. No. 39). The magistrate denied Jason's show-cause motion. (*Id.*). On January 7, 2015, the trial court issued a "partial agreed entry on temporary orders." (Doc. No. 41).

{¶6} On January 15, 2015, Kinsey filed an objection to the magistrate's January 5, 2015 temporary orders. (Doc. No. 47). After a hearing on February 9,

2015, the magistrate issued an order on February 11, 2015 regarding Jason's and Kinsey's parenting time of R.S. (Doc. No. 51).

{¶7} On February 17, 2015, Kinsey filed a motion requesting that the trial court appoint a guardian ad litem ("GAL") for R.S. (Doc. No. 55). The magistrate appointed a GAL on February 27, 2015. (Doc. No. 56).

{¶8} On March 25, 2015, Kinsey filed a motion requesting temporary child support because she was "still searching for full time employment." (Doc. No. 57).

{¶9} On July 24, 2015, Kinsey filed a motion for shared parenting and submitted a proposed shared parenting plan. (Doc. No. 66).[2]

{¶10} The GAL filed his report on August 10, 2015. (Doc. No. 67). In his report, the GAL recommended shared parenting; however, he noted,

> If Shared Parenting is not an option, * * * it is [his] recommendation
> that [Kinsey] be granted custody of the child, as she has been the
> primary caregiver of the child since birth, and that [Jason] be granted
> an allocation of parenting time that allows the child to spend as nearly
> as possible equal time with each of her parents while she grows up.

(*Id.*).

---

[2] According to the GAL's report, Jason initially supported shared parenting, "but after seeing the results of [Kinsey's] Psychological Evaluation, [Jason] now wants full custody of [R.S.], with [Kinsey] receiving standard visitation." (Doc. No. 67).

{¶11} On August 17, 2015, Jason filed a "Pre-Trial Statement" in which he requested that the trial court name him residential parent and legal custodian of R.S. (Doc. No. 71). That same day, Jason filed a motion requesting that the trial court conclude that October 21, 2014 is the de facto termination date of the marriage. (Doc. No. 74). Also that day, Kinsey filed her "Pre-Trial Statement." (Doc. No. 75). On August 19, 2015, Kinsey filed an addendum to her pre-trial statement asserting that she obtained employment to begin on August 28, 2015 at Der Dutchman at a rate of $9.00 per hour. (Doc. No. 76).

{¶12} After a hearing on August 24-25, 2015, the magistrate issued his decision on October 6, 2015 and a nunc pro tunc decision on October 16, 2015. (Doc. Nos. 91, 97).

{¶13} After being granted an extension of time, Kinsey filed her objections to the magistrate's decision on October 30, 2015. (Doc. Nos. 100, 108). Jason filed his reply to Kinsey's objections on November 9, 2015. (Doc. No. 109). The trial court issued its entries addressing Kinsey's objections on December 8 and 14, 2015 and January 25, 2016. (Doc. Nos. 112, 114, 120).

{¶14} The trial court issued a final divorce decree on March 15, 2016. (Doc. No. 126).

{¶15} Kinsey filed her notice of appeal on April 13, 2016. (Doc. No. 135). She raises four assignments of error for our review. For ease of our discussion, we

will address together Kinsey's first and second assignments of error, then Kinsey's third and fourth assignments of error.

**Assignment of Error No. I**

**The Trial Court Erred in Using the Custody and Parenting Time Orders to Punish Appellant.**

**Assignment of Error No. II**

**The Trial Court Abused its Discretion in Ignoring the Manifest Weight of the Evidence that Supported Custody to Appellant and an Equal Parenting Time Schedule.**

{¶16} In her first and second assignments of error, Kinsey argues that the trial court abused its discretion by concluding that it is not in the best interest of R.S. for Kinsey to be her residential parent and legal custodian. In those assignments of error, Kinsey also challenges the trial court's parenting-time order.

{¶17} "Revised Code 3109.04 governs the trial court's award of parental rights and responsibilities." *August v. August*, 3d Dist. Hancock No. 5-13-26, 2014-Ohio-3986, ¶ 22, citing *King v. King*, 3d Dist. Union No. 14-11-23, 2012-Ohio-1586, ¶ 8. "The statute requires that in allocating the parental rights and responsibilities, the court 'shall take into account that which would be in the best interest of the child[].'" *Id.*, quoting *Self v. Turner*, 3d Dist. Mercer No. 10-06-07, 2006-Ohio-6197, ¶ 6, quoting R.C. 3109.04(B)(1). "It further provides for options available to the trial court when allocating parental rights and responsibilities: 'primarily to one of the parents' (R.C. 3109.04(A)(1)), or 'to both parents' (R.C.

3109.04(A)(2)).” *Id.*, citing *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 23-24 and R.C. 3109.04(A), (D), (F), (G). “Under R.C. 3109.04(D)(1)(a)(iii), where, as here, ‘only one parent makes a request’ for shared parenting and the trial court determines that shared parenting is not in the best interest of the child, the trial court may deny a party’s motion requesting shared parenting and proceed as if the request for shared parenting had not been made.” *Id.*

**{¶18}** “Where neither party files a pleading or motion requesting shared parenting in accordance with R.C. 3109.04(G),” or where the trial court concludes that a shared parenting plan is not in the best interest of the child,

> “the [trial] court, in a manner consistent with the best interest of the child[], shall allocate the parental rights and responsibilities for the care of the child[] primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the child[], including, but not limited to, the responsibility to provide support for the child[] and the right of the parent who is not the residential parent to have continuing contact with the child[].”

*Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 48, quoting R.C. 3109.04(A)(1) and citing *Frey v. Frey*, 3d Dist. Hancock No. 5-06-36, 2007-Ohio-2991, ¶ 28.

**{¶19}** "Further subsections of [R.C. 3109.04] spell out ten factors that the court shall consider to determine the best interest of the child, and five more factors to determine whether shared parenting is in the child's best interest." *August* at ¶ 23, citing R.C. 3109.04(F)(1) and (2). "Any additional relevant factors shall be considered as well." *Id.*, citing R.C. 3109.04(F)(1) and (2).

> "In determining the best interest of a child [under R.C. 3109.04], whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a)  The wishes of the child's parents regarding the child's care;
>
> (b)  If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c)  The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense

was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)　　Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)　　Whether either parent has established a residence, or is planning to establish a residence, outside this state."

*Id.*, quoting R.C. 3109.04(F)(1).

"In determining whether shared parenting is in the best interest of the child[], the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the

factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a)   The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b)   The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c)   Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d)   The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e)   The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."

*Id.*, quoting R.C. 3109.04(F)(2).

**{¶20}** "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Walker*, 2013-Ohio-1496, at ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-Ohio-3008, ¶ 22 and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."'" *Id.*,

quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). "'An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable.'" *Id.*, quoting *Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶21}** "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Id.* at ¶ 29, quoting *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, ¶ 41, citing *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. "A trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody." *Brammer* at ¶ 41, citing *Shaffer v. Shaffer*, 3d Dist. Paulding No. 11-04-22, 2005-Ohio-3884, ¶ 20. "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Krill* at ¶ 29, citing *Meachem* at ¶ 30, citing *Portentoso v.*

*Portentoso*, 3d Dist. Seneca No. 13-07-03, 2007-Ohio-5770, ¶ 22. "'[A]bsent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant "best interest" factors listed in R.C. 3109.04(F)(1).'" *Meachem* at ¶ 32, citing *Goodman v. Goodman*, 3d Dist. Marion No. 9-04-37, 2005-Ohio-1091, ¶ 18.

**{¶22}** "Additionally, we note that the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Walton v. Walton*, 3d Dist. Union No. 14-10-21, 2011-Ohio-2847, ¶ 20, citing *Clark v. Clark*, 3d Dist. Union No. 14-06-56, 2007-Ohio-5771, ¶ 23, citing *In re Brown*, 98 Ohio App.3d 337 (3d Dist.1994). "Therefore, '"[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."'" *Id.*, quoting *Clark* at ¶ 23, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984).

**{¶23}** After reviewing the R.C. 3109.04(F)(1) and (2) factors, the magistrate and trial court concluded that shared parenting is not in R.S.'s best interest and that it is in R.S.'s best interest that Jason have residential and legal custody of R.S.

**{¶24}** In his October 6, 2015 decision and October 16, 2015 nunc pro tunc order, the magistrate considered the R.C. 3109.04 factors in concluding that shared

parenting is not in R.S.'s best interest and that it is in R.S.'s best interest that Jason have residential and legal custody of R.S. In concluding that shared parenting is not in R.S.'s best interest, the magistrate found: (1) "the hostility between the parties and their differences of opinion regarding parenting make shared parenting not viable in the present case"; (2) "there is good reason to be concerned about the judgment and behavior of both parties"; (3) "[b]oth parents have demonstrated personal priorities that are inconsistent with the best interest of the child"; and (4) "[a]lthough intelligent and apparently capable of being wonderful residential parents, both parties have engaged in utter nonsense showing anger or selfishness toward one-another that is harmful to [R.S.]" (Doc. No. 91).

{¶25} Regarding its conclusion that it is in R.S.'s best interest that Jason have residential and legal custody of R.S., the magistrate found the following R.C. 3109.04(F)(1) factors: R.C. 3109.04(F)(1)(a), Kinsey requested shared parenting and Jason argued that shared parenting is not in R.S.'s best interest because he and Kinsey cannot cooperate and make joint decisions concerning R.S., and, in the alternative, both Jason and Kinsey wished to be R.S.'s residential parent and legal custodian; R.C. 3109.04(F)(1)(b), no in camera interview was conducted; R.C. 3109.04(F)(1)(c), R.S. has a good relationship with Jason and Kinsey, and R.S. does not have any close family living in Ohio; R.C. 3109.04(F)(1)(d), R.S. is thriving and doing well; R.C. 3109.04(F)(1)(e), Jason and Kinsey were evaluated by a

psychologist, Dr. Richard Bromberg ("Dr. Bromberg"), who concluded that Jason and Kinsey both suffer from psychological disorders; R.C. 3109.04(F)(1)(f), Jason and Kinsey complied with all companionship orders, but both engaged in forms of bad behavior during custody transfers causing stress for R.S.; R.C. 3109.04(F)(1)(g), there is no child-support order; R.C. 3109.04(F)(1)(h), neither party has been convicted of domestic violence; however, Kinsey maintains a civil protection order ["CPO"] against Jason in the State of Iowa and has accused Jason of domestic violence; but, Kinsey's allegation of domestic violence against Jason where her arm was broken is "devoid of merit"; R.C. 3109.04(F)(1)(i), while neither party has deprived the other parent's right to parenting time, "the court is concerned with [Kinsey] maintaining the protection order in Iowa as a potential weapon against [Jason]"; R.C. 3109.04(F)(1)(j), while neither party established, or is planning to establish, a residence outside of Ohio, "currently [Kinsey] has no anchors in Ohio that would preclude [her] from removing the child to the State of Iowa" because she "has no fixed place of residence in Ohio nor has she sought employment commensurate with her education and experience." (*Id.*).

{¶26} The magistrate further found that Dr. Bromberg concluded that shared parenting is not a viable option and that Jason "should be named residential parent and legal custodian of [R.S.] with substantial parenting time allocated to [Kinsey]." (*Id.*). Also, the magistrate found that the GAL concluded that shared parenting is

not in R.S.'s best interest and that Kinsey should be R.S.'s residential parent and legal custodian "because she has been [R.S.'s] primary caregiver and [the GAL] did not detect in [Kinsey] the mental issues of concern to Dr. Bromberg." (*Id.*).

{¶27} The magistrate noted that "the court is troubled by [Kinsey's] manipulation and lack of candor." (*Id.*). Specifically, the magistrate noted a concern that Kinsey would "remove the child to Iowa in an attempt to find refuge behind the civil protection order. Although [Kinsey] has denied an intention to go to Iowa, the retention of that order is considered a sign of bad faith." (*Id.*). The magistrate further noted that he afforded "great weight" to the GAL's recommendation but rejected the GAL's discount of Dr. Bromberg's opinion, and the magistrate rejected Kinsey's challenge to Dr. Bromberg's scientific methods. (*Id.*).

{¶28} In its January 25, 2016 decision overruling Kinsey's objections to the magistrate's decision relating to parental rights and responsibilities, the trial court also concluded that shared parenting is not in R.S.'s best interest and that it is in R.S.'s best interest that Jason have residential and legal custody. The trial court concluded that the magistrate "expressly evaluated each and every statutory factor," and the trial court "approve[d] and adopt[ed] the findings and recommendations of the Magistrate." (Doc. No. 120).

{¶29} The trial court specifically addressed Kinsey's objection to the magistrate's decision in which she challenged the magistrate's statutory findings as "deficient or incorrect" and argued that "ultimately her wishes are more credible and should be given more weight." (*Id.*). (*See also* Doc. No. 108). In her objection to the magistrate's custody conclusion, Kinsey conceded the magistrate's findings as to R.C. 3109.04(F)(1)(b)-(d), (f)-(g). (Doc. No. 108). Kinsey's objection related to the magistrate's findings under R.C. 3109.04(F)(1)(a), (e), (h)-(j). In particular, Kinsey objected: R.C. 3109.04(F)(1)(a), "that ultimately her wishes are more credible and should be given more weight"; R.C. 3109.04(F)(1)(e), "the Magistrate's reliance on the Dr. Bromberg's [sic] report and testimony were misplaced and inconsistent, given the totality of the evidence presented at trial"; and R.C. 3109.04(F)(1)(h)-(j), "the Magistrate has placed improper weight on the protection order in Iowa and [Kinsey's] alleged lack of anchors in Ohio." (*Id.* at 5, 11, 19).

{¶30} In dismissing her objections, the trial court concluded that Kinsey's "objection to the Magistrate's recommendation on the allocation of parental rights and responsibilities does not allege any error of law or improper consideration or exclusion of evidence. It is but an appeal for the court to reweigh the evidence in light of [Kinsey's] arguments." (Doc. No. 120). The trial court first addressed Kinsey's argument that the magistrate failed to consider that she sought counseling

in response to Dr. Bromberg's diagnosis, while Jason did not seek any counseling. The trial court concluded that Kinsey's "testimony on the course of counseling was substantially uninformative of facts and self-serving." (*Id.*). The trial court next addressed Kinsey's argument regarding the Iowa CPO and concluded that the magistrate's inference as to Kinsey's credibility "is rationally based upon facts and existing circumstances that together with other evidence call into question Mother's credibility and commitment to nurture the parent-child relationship between [Jason] and [R.S.]" (*Id.*).

{¶31} The trial court adopted "the reasons and findings identified in" its January 25, 2016 entry overruling Kinsey's objections to the magistrate's decision and adopted the "reasons and findings" of the magistrate's decision in its final divorce decree. (Doc. Nos. 120, 126).

{¶32} In her first assignment of error, Kinsey argues that "the trial court clearly used the custody and parenting time orders to punish" her because of her "lack of full-time employment in an engineering position" and because she "obtained a CPO in Iowa." (Appellant's Brief at 3). In support of her argument, Kinsey relies on *Marshall v. Marshall*, in which this court concluded that the trial court abused its discretion in its custody decision because it "placed undue emphasis on the fact that [the mother] left Ohio and established a residence out of state" while disregarding that the mother was the primary caregiver for the children. 117 Ohio

App.3d 182, 187-188 (3d Dist.1997). That case is distinguishable from the facts in this case.

**{¶33}** In *Marshall*, this court concluded that the trial court abused its discretion by granting custody of the children to their father because the trial court's determination appeared "to be an attempt to hold [the mother] in contempt for her failure to abide by the prior court order to return to Ohio." *Id.* at 186. In particular, we concluded that "the trial court placed undue emphasis on the fact that [the mother] left Ohio and failed to return" despite the fact that the mother was the primary caregiver for the children. *Id.* at 186-187. More specifically, we concluded that the trial court's custody determination in *Marshall* was based on only one of the best-interest factors—the mother's "nonresidence" in Ohio. *Id.* at 187. That is not the case here; rather, the trial court weighed all of the best-interest factors.

**{¶34}** Similarly, in her second assignment of error, Kinsey argues that the trial court abused its discretion by concluding that it is in R.S.'s best interest for Jason to be her residential parent and legal custodian because that conclusion is not supported by a substantial amount of competent, credible evidence and is against the manifest weight of the evidence.[3] We reject her argument. The trial court did not use the custody and parenting time orders to "punish" Kinsey. Notwithstanding Kinsey's misplaced arguments, the trial court's findings as to the best-interest

---

[3] Because Kinsey does not challenge the trial court's shared-parenting decision, we will not address it.

factors challenged by Kinsey—R.C. 3109.04(F)(1)(a), (e), (h)-(j)—are supported by some competent, credible evidence.

{¶35} Kinsey's argument boils down to a plea for this court to reweigh the evidence. Indeed, Kinsey's arguments pertain to credibility determinations of the trial court, not any specific errors of law. As we noted above, the trial court is in the best position to observe witnesses, weigh evidence, and evaluate testimony, and this court will not reverse a trial court's decision based on a difference of opinion on the credibility of witnesses or evidence. *See Meachem*, 2011-Ohio-519, at ¶ 20. As such, it is not our duty to reexamine which parent's desire to be R.S.'s legal custodian and residential parent under R.C. 3109.04(F)(1)(a) is more credible.

{¶36} Indeed, the record makes clear that the magistrate did not find Kinsey credible. In addition to the magistrate's decision in which he plainly stated that he did not find Kinsey credible, the magistrate stated regarding Kinsey's credibility:

> Ms. Sovern, I'm going to ask you please, I feel like you are playing games with these answers. Answer the question that he's asking you. I don't want to hear you don't recall every word. That's, you're being evasive. Answer the question.
>
> Do you recall being asked about it? And do you recall the testimony? It's a yes or no, okay? None of this gamey business."

(Aug. 24, 2015 Tr., Vol. I, at 54-55).

-20-

{¶37} Further, with regard to R.C. 3109.04(F)(1)(e), which requires the trial court to consider the mental health of all persons involved, the trial court's conclusion that Kinsey's "testimony on the course of counselling was substantially uninformative of facts and self-serving [and] tantamount to no evidence on the specifics of her on-going counseling at all" is supported by a substantial amount of competent, credible evidence. (*See* Doc. No. 120). (*See also* Aug. 24, 2015 Tr., Vol. I, at 109, 111-121). Stated differently, the trial court did not find Kinsey's testimony regarding her course of counseling credible.

{¶38} Kinsey testified that she sought psychological counseling with Dr. Guthrie in March 2015 after receiving Dr. Bromberg's report. (Aug. 24, 2015 Tr., Vol. I, at 107-108). She testified that she is working on "[s]elf-confidence, sleep hygiene, and * * * prioritizing worry" with Dr. Guthrie. (Aug. 25, 2015 Tr., Vol. III, at 319). However, she testified that she was not working with Dr. Guthrie on the issues raised by Dr. Bromberg's report; rather, she was working with Dr. Guthrie on personal improvement—namely, self-confidence. (Aug. 24, 2015 Tr., Vol. I, at 109). Kinsey also testified that she was seeing Dr. Shelly Soviak ("Dr. Soviak") for counseling. (Aug. 24, 2015 Tr., Vol. II, at 261-262). When asked what she worked on with Dr. Soviak, Kinsey responded, "I don't recall precisely. We worked on similar issues to that [sic] I already reported for Dr. Guthrie, like, self-confidence, and it was one of the most important ones." (*Id.* at 262). Furthermore, Kinsey

testified that she refused to sign a release for counseling records which would corroborate that she was receiving counseling and what she was addressing through counseling. (Aug. 24, 2015 Tr., Vol. I, at 121).

**{¶39}** Because the trial court did not find her testimony credible, it was within the trial court's discretion to not weigh this factor in Kinsey's favor. Rather, the trial court's consideration of R.C. 3109.04(F)(1)(e) is supported by a substantial amount of competent, credible evidence—namely, the psychological-evaluation report of Dr. Bromberg in which Dr. Bromberg recommends granting Jason legal and residential custody of R.S. (*See* Aug. 24, 2015 Tr., Vol. I, at 162). That Kinsey challenges the legitimacy of Dr. Bromberg's findings and the credibility of his testimony are also matters of evidentiary value for the trial court to weigh. *See Walton*, 2011-Ohio-2847, at ¶ 31 ("Here, the credibility of Dr. Lowenstein and the weight to be given to his testimony and report was a matter for the trial court, as the trier of fact, to determine, and we will not second guess its determination."), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967) and *In re R.N.*, 10th Dist. Franklin No. 04AP-130, 2004-Ohio-4420, ¶ 55.

**{¶40}** Although she did not specifically assign it as error, Kinsey further argues under her first and second assignments of error that the trial court "abused its discretion in failing to allow for proper cross-examination of the psychologist[.]" (Appellant's Brief at 10). Specifically, she argues that her trial counsel was

prevented from cross-examining Dr. Bromberg regarding "the guidelines for psychological evaluations from the Associate of Family and Conciliation Courts" and "his failure to discuss the domestic violence with [Jason]." (*Id.* at 14). Kinsey argues that this cross-examination would have questioned Dr. Bromberg's reliability as a witness.

**{¶41}** A trial "court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Evid.R. 611(A). The trial court shall allow cross-examination "on all relevant matters and matters affecting credibility." Evid.R. 611(B). The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge, which will not be reversed absent an abuse of discretion. *O'Brien v. Angley*, 63 Ohio St.2d 159, 163 (1980).

**{¶42}** As an initial matter, we note that Kinsey did not allege this error in her objections to the magistrate's decision. *See* Civ.R. 53. Civ.R. 53(D)(3)(b)(iv) provides:

> Except for a claim of plain error, a party shall not assign as error on
> appeal the court's adoption of any factual finding or legal conclusion,

whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

*See also Hamilton v. Hamilton*, 10th Dist. Franklin No. 14AP-1061, 2016-Ohio-5900, ¶ 4-6 (discussing the consequences of the failure to object to a magistrate's decision). "'[I]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself.'" *Hamilton* at ¶ 8, quoting *Uretsky v. Uretsky*, 10th Dist. Franklin No. 02AP-1011, 2003-Ohio-1455, ¶ 7, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

**{¶43}** The circumstances of this case are not exceptional and do not give rise to plain error. Based on our review of the portions of the record to which Kinsey directs us, the magistrate did not prevent or limit Kinsey's cross-examination of Dr. Bromberg. Indeed, in the first instance to which Kinsey directs us, the magistrate stated, "I'm having an incredibly difficult time even how [sic] that rule is applicable to this case. There's no foundation for that." (Aug. 24, 2015 Tr., Vol. II, at 201). Kinsey's trial counsel responded, "Okay. I'll do foundation. I'll try to do it better" and proceeded to continue her cross-examination of Dr. Bromberg regarding the

guidelines for psychological evaluations from the Associate of Family and Conciliation Courts. (*See id.*). In the second instance to which Kinsey directs us, the magistrate admonished Kinsey's trial counsel—as the magistrate is required to do under Evid.R. 611(A)—that her line of questioning regarding the incident in which Kinsey's hand was fractured "ha[d] turned argumentative." (*Id.* at 214). The magistrate further instructed Kinsey's trial counsel that she "can stand up and argue [her point about the incident with regard to Dr. Bromberg's report] at [her] leisure at the right time[.]" (*Id.*). Kinsey submitted her closing argument in writing on September 15, 2015, in which she had the opportunity to make that argument. (*See* Doc. No. 89). Thus, Kinsey failed to demonstrate that the trial court committed plain error.

{¶44} The trial court's finding as to R.C. 3109.04(F)(1)(h), which permits the trial court to consider certain prior criminal convictions of the parties, is supported by a substantial amount of competent, credible evidence. That is, there is no evidence in the record that either party had been convicted of or pled guilty to, or even indicted for, *any* offense. (*See* Aug. 25, 2015 Tr., Vol III, at 320). The evidence reflects that Kinsey's hand was fractured when Jason was taking R.S.'s car seat out of the car, and Kinsey grabbed onto the car seat to prevent Jason from taking it out of the car, and Kinsey's hand was twisted as each tried to take control of the car seat. (Dec. 20, 2014 Depo. at 19, 23-24, 64-65). (*See also* Aug. 25, 2015

Tr., Vol. III, at 451-453); (Aug. 25, 2015 Tr., Vol. IV, at 514). Kinsey testified that she reported that incident, as well as an incident in which she alleged Jason was "squeezing [her] neck," to the Union County Sheriff's Office. (Dec. 20, 2014 Depo. at 23, 43). There is no evidence of any charges against Jason resulting from those allegations or any crimes contemplated by R.C. 3109.04(F)(1)(h) or otherwise. Because there is no evidence in the record that Jason pled guilty to or was convicted of a crime involving child abuse or domestic violence, there is a substantial amount of competent, credible evidence supporting the trial court's finding as to R.C. 3109.04(F)(1)(h).

{¶45} Moreover, in *Heilman v. Heilman*, despite the plain language of the statute, we incorrectly inferred that evidence of "an incident of physical violence between [the spouses] giving rise to a CPO" satisfied the best-interest factor under R.C. 3109.04(F)(1)(h). 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 29. However, according to the plain language of the statute, evidence sufficient to satisfy R.C. 3109.04(F)(1)(h) includes convictions or guilty pleas to offenses involving child abuse or domestic violence. While evidence of physical violence giving rise to a CPO is not properly considered under R.C. 3109.04(F)(1)(h), that evidence may be properly considered as other relevant evidence for the trial court's custody determination. *See Brammer*, 2013-Ohio-2843, at ¶ 41. Moreover, based on our discussion above, the trial court's rejection of Kinsey's domestic-violence

*allegation* giving rise to the CPO as meritless is supported by a substantial amount of competent, credible evidence.

**{¶46}** Because they involve similar issues, we will address R.C. 3109.04(F)(1)(i) and (j) together. There is a substantial amount of competent, credible evidence supporting the trial court's findings as to R.C. 3109.04(F)(1)(i) and (j). The trial court adopted the magistrate's finding that neither parent continuously and willfully denied the other parent's right to parenting time in accordance with a court order, which is supported by the record. And the trial court adopted the magistrate's finding that neither parent established or planned to establish a residence outside of Ohio, which is also supported by the record.

**{¶47}** Nonetheless, the trial court concluded that the evidence in the record "call[s] into question [Kinsey's] credibility and commitment to nurture the parent-child relationship between [Jason] and [R.S.]." (Doc No. 120). Notwithstanding his findings under R.C. 3109.04(F)(1)(i) and (j), the magistrate weighed Kinsey's credibility regarding her intentions to remain in Ohio because she "has no anchors in Ohio that would preclude [her] from removing the child to the State of Iowa." (*Id.*). In particular, the trial court considered that Kinsey "has no fixed place of residence in Ohio nor has she sought employment commensurate with her education and experience." (*Id.*). The trial court adopted the magistrate's findings. The trial

court is permitted to consider this evidence in making its custody determination. *Brammer*, 2013-Ohio-2843, at ¶ 41.

**{¶48}** While we will not second guess the trial court's credibility determination, the trial court's findings underlying its credibility determination are supported by a substantial amount of competent credible evidence. Indeed, Kinsey submitted to the trial court on August 19, 2015 that she obtained part-time employment at Der Dutchman making doughnuts to begin on August 28, 2015 at a wage of $9.00 per hour. (Doc. No. 76); (Aug 25, 2015 Tr., Vol. IV, at 518-520, 527). Kinsey testified that she obtained that job after being admonished by the trial court to seek employment. (Aug. 25, 2015 Tr., Vol. IV, at 516-518). She further testified regarding her start date, "Right now tentatively scheduled for the 28th pending what happens this week with the Court proceedings." (*Id.* at 520). Likewise, she testified that she accepted the donut-making job because the work schedule "works around the current custody schedule, allowing Jason that overnight time with [R.S.]" (*Id.* at 524).

**{¶49}** Kinsey testified that she obtained a mechanical engineering degree from Iowa State University and was employed at Honda until she was terminated for poor performance in 2012. (*Id.* at 501-502, 527). Kinsey testified that she made $86,257.00 in the last full year she was employed at Honda. (Aug. 25, 2015 Tr., Vol. III, at 315-316). Moreover, Kinsey testified that she will "ultimately" be able

to find a job commensurate to her engineering position at Honda. (*Id.* at 317). Specifically, she testified, "I would like to continue working in a part time capacity for Der Dutchman right now. Eventually finding some segue into a slightly different market for my engineering skills and be able to apply the engineering skills." (Aug. 25, 2015 Tr., Vol. IV, at 527). Yet, she testified that she desired to obtain an engineering position "in about three years" because R.S. "will be in school full time" at that point. (*Id.* at 529). Indeed, she testified that she rejected two engineering job offers after R.S. was born. (*Id*. at 507-508). Kinsey testified that she did not provide any job-search information from the automatic searches she established on "Monster" and "Career Builder," correspondence documenting her job search, a list of names of people that she contacted in her job search, or copies of her resume that she submitted to prospective employers as she indicated that she would. (Aug. 24, 2015 Tr., Vol. II, at 270-273).

{¶50} Kinsey testified that, at the time she filed her answer, she indicated that she was a resident of Iowa. (Aug. 24, 2015 Tr., Vol. I, at 28). She testified that she left—with R.S.—the marital residence on October 21, 2014 to go to her parent's house in Iowa, where she remained until November 16, 2014. (*Id.* at 29-30). Kinsey was served with Jason's divorce complaint when she returned to Ohio on November 16, 2014. (*Id.* at 30). She testified that, after being served the complaint, she again left Ohio with R.S. despite the trial court's restraining order that directed her not to

remove R.S. from the jurisdiction of the trial court. (*Id.* at 36-37, 107); (Doc. No. 9). Kinsey further testified that she obtained the CPO against Jason on November 10, 2014 precluding him from going to Kinsey's parents' house in Iowa. (*Id.* at 39-40, 61). She testified that she intended to maintain that protection order "[f]or the current time period." (*Id.* at 40).

{¶51} Despite her deposition testimony that she wanted to move to Iowa with R.S., Kinsey testified that she did not want to move to Iowa with R.S. "at this moment of time"; however, Kinsey testified that her "family lives there [and she] would like [R.S.] to visit there and visit [her family] there as much as possible." (Aug. 24, 2015 Tr., Vol. II, at 274). She further testified that she did not intend to establish a residence outside of Ohio. (Aug. 25, 2015 Tr., Vol. III, at 320). At the time of trial, she testified that she was living with another couple and their children in Ohio. (Aug. 25, 2015 Tr., Vol. IV, at 544).

{¶52} The trial court was in the best position to observe the parties during the proceedings, and the record supports the trial court's findings. Based on our discussion above, the trial court's best-interest findings are supported by a substantial amount of competent and credible evidence. As such, the trial court's custody determination is not against the manifest weight of the evidence. Accordingly, the trial court did not abuse its discretion by concluding that it is in R.S.'s best interest that Jason have residential and legal custody of R.S.

{¶53} Kinsey also challenges the trial court's parenting-time order. In particular, she argues that she should have been granted more parenting time with R.S. than the trial court's standard parenting time.

{¶54} R.C. 3109.051 governs visitation rights of non-residential parents and provides, in pertinent part:

If a divorce * * * proceeding involves a child and if the court has not issued a shared parenting decree, the court * * *, in accordance with division (C) of this section, shall make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the best interest of the child to permit that parent to have parenting time with the child and includes in the journal its findings of fact and conclusions of law. Whenever possible, the order or decree permitting the parenting time shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child.

R.C. 3109.051(A). *See also Walton*, 2011-Ohio-2847, at ¶ 21; *Braatz v. Braatz*, 85 Ohio St.3d 40, 44-45 (1999).

{¶55} To determine whether a parenting schedule is in the child's best interest, R.C. 3109.051(D) directs the trial court to consider the following factors:

(1)   The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2)   The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3)   The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4)   The age of the child;

(5)   The child's adjustment to home, school, and community;

(6)   If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or

other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to

believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

R.C. 3109.051(D). *See also Walton* at ¶ 21.

**{¶56}** "A trial court's establishment of a non-residential parent's [parenting-time] rights is within its sound discretion and will not be disturbed on appeal absent a showing of an abuse of discretion." *Walton* at ¶ 19, citing *Fordham v. Fordham*, 3d Dist. Logan No. 8-08-17, 2009-Ohio-1915, ¶ 18, citing *Elson v. Elson*, 3d Dist. Shelby No. 17-04-16, 2005-Ohio-3228, ¶ 11, citing *Appleby v. Appleby*, 24 Ohio St.3d 39, 41 (1986); *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). "The trial court's discretion over [parenting time] in this situation is broader than the court's discretion regarding child custody matters." *Walton* at ¶ 19, citing *Elson* at ¶ 11, citing *State ex rel. Scordato v. George*, 65 Ohio St.2d 128 (1981). "Furthermore,

the trial court must exercise its discretion in the best interest of the child."  *Id.*, citing *Bodine v. Bodine*, 38 Ohio App.3d 173, 175 (1988).

{¶57} In his October 6, 2015 decision and October 16, 2015 nunc pro tunc order, the magistrate specifically stated that he considered the R.C. 3109.051 factors in recommending parenting time for Kinsey.  (Doc. No. 91).  In particular, the magistrate found that he could only order equal parenting time if Kinsey remained underemployed; however, he concluded that Kinsey's underemployment is not in R.S.'s best interest.  (*Id.*).  In overruling Kinsey's objection to the magistrate's finding, the trial court weighed the "high parental conflict" between Jason and Kinsey and concluded that the trial court's standard parenting-time schedule is in R.S.'s best interest because it limits "frequent changes of physical custody proposed by the parties [which] would create more opportunities for the parents to impose almost nonstop stress on [R.S.]"  (Doc. No. 120).

{¶58} Kinsey argues that the trial court abused its discretion by not granting her more parenting time than the time allotted by the trial court's standard parenting-time schedule because the trial court's findings are not supported by the record.  She argues that the trial court "failed to consider or completely disregarded most of the factors in [R.C.] 3109.051" because the trial court disregarded "the fact that the evidence and factors overwhelmingly supported * * * equal parenting time to the parties."  (Appellant's Brief at 19).  Specifically, Kinsey argues that the trial court

abused its discretion by not ordering an equal parenting time schedule because "the testimony and evidence at trial – specifically the psychologist's report, the majority of the psychologist's testimony, the report and testimony of the GAL, the testimony of [Kinsey] and her witnesses, and even much of the testimony of [Jason] – overwhelmingly support an equal parenting time schedule[.]"  (*Id.* at 9-10). Likewise, similar to her argument regarding the trial court's custody determination, Kinsey argues that the trial court used its parenting-time order to punish Kinsey for her employment status and for maintaining the CPO.  (*See id.* at 3, 5).

{¶59} Again, Kinsey disregards the best-interest analysis that the trial court is required to conduct when establishing a parenting-time order.  In determining the parenting-time schedule that is in R.S.'s best interest, the trial court considered the harm suffered by R.S. during the custody exchanges.  The trial court stated regarding the magistrate's finding pertaining to Kinsey's underemployment, "While the cost of child care or the health of a child are factors in a parent's employment decision, those factors are properly weighed on the issue of voluntary underemployment itself and are not issues of record in the present case." (Doc. No. 120).  Further, the trial court did not so much as mention the CPO in its parenting-time analysis.

{¶60} The trial court did not abuse its discretion by ordering the trial court's standard parenting-time schedule because the trial court's best-interest

determination is supported by competent, credible evidence. *Walton*, 2011-Ohio-2847, at ¶ 35. Indeed, the parties testified to the difficulties they had during the exchanges of custody—namely, their inability to communicate with one another and R.S.'s stress from the exchanges of custody. (*See* Aug., 24, 2015 Tr., Vol. II, at 276-281); (Aug. 25, 2015 Tr., Vol. III, at 321, 342-343, 346-348, 354-358, 360, 370, 419-424, 467-468, 481); (Aug. 25, 2015 Tr., Vol. IV, at 535-538, 547). Jason recalled one exchange where he called the police because Kinsey stayed in her car "watching" as Jason prepared R.S. to leave with him. (Aug. 25, 2015 Tr., Vol. III, at 423-424). According to Jason, Kinsey's behavior "was creating difficulties to complete the transfer and * * * Kinsey was distracting [R.S.], and it was making it difficult for [him] to be able to leave." (*Id.*). Jason further testified that calling the police as a result of that incident was "a mistake" because he "didn't see [Kinsey's behavior] as a threat." (*Id.* at 424). And Kinsey recalled an incident where she did not feel comfortable going to Jason's residence to pick up R.S., so she waited at the end of the driveway and Jason "walked out to the end of the driveway where [she] was sitting and, and [sic] handed off [R.S.]. [Jason] walked back to the house, and [R.S.] was upset at that point[.]" (Aug. 25, 2015 Tr., Vol. IV, at 547).

{¶61} In particular, regarding the parties "equal" parenting time exercised during the pendency of the case, Dr. Bromberg testified that

the arrangement that has been going, been operating is not working. It's creating problems; and, again, child is the first one to feel the impact of that, and I would suggest that an alternative that would be better would likely be less transitions. Probably * * * what would normally be called a standard type of visitation agreement.

* * *

But because of the less than healthy arrangement that has been continuing between the two in terms of visitation for [R.S.] * * *, with both her parents, I would say that there needs to be less pressure on everyone until we see some significant changes in both the co-parenting capabilities; and, therefore, I would say that it would be more safe and more protective of, [sic] [R.S.] to have something more of a standard order of visitation[.]"

(Aug. 24, 2015 Tr., Vol. I, at 166, 167). Dr. Bromberg further testified that "the intensity was so great between" Jason and Kinsey that he had to ensure that they were "in two different offices about 50 yards apart" "just to move their daughter down the hall from one room to another and just to figure out how the daughter was going to go home on the day that [he] had both parents in [his] office." (*Id.* at 156). He testified, "I could tell that [R.S.] was affected by this one moment of bad transition that was going on at the time." (*Id.* at 157-158). According to Dr.

Bromberg, he was concerned that R.S. would suffer because "[t]here was so much animosity involved in these transitions." (*Id.* at 157).

**{¶62}** The GAL testified that "there should be visitation in excess of what the standard visitation is" and that there should be an equal division of parenting time. (Aug. 25, 2015 Tr., Vol. IV, at 622, 630-631). However, when asked whether he thought the parties will "cooperate with whatever plan is recommended best for [R.S.]," he testified, "I don't believe either one of these parties is going to be able to, to do that." (*Id.* at 629). Regarding holidays, the GAL testified that the local parenting-rule "would work best." (*Id.* at 634). Finally, the magistrate asked the GAL, "[H]ow do we accommodate [parenting time in excess of the standard schedule] and spare the child the anticipated stress from the transition periods?" to which the GAL responded, "I don't know how we're going to do that. Absent both these parents being more mature and handling it properly for the benefit of the child, I don't know what else we can do." (*Id.* at 635).

**{¶63}** Kinsey argues that the trial court abused its discretion "by failing to take the GAL's report and recommendation regarding parenting time into consideration, and by failing to give it appropriate weight." (Appellant's Brief at 16). "'[A] trial court is not bound to follow a guardian ad litem's recommendation.'" *Bomberger-Cronin v. Cronin*, 2d Dist. Greene No. 2014-CA-4, 2014-Ohio-2302, ¶ 27, quoting *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-

556, 2009-Ohio-6992, ¶ 46. *See also Castanien v. Castanien*, 3d Dist. Wyandot No. 16-12-08, 2013-Ohio-1393, ¶ 26. "'The function of a guardian ad litem is to consider the best interests of a child and to make a recommendation to the court, but the ultimate decision in any proceeding is for the judge, and the trial court does not err in making an order contrary to the recommendation of the guardian ad litem.'" *Koller v. Koller*, 2d Dist. Montgomery No. 22328, 2008-Ohio-758, ¶ 24, quoting *In re D.W. and D.W.*, 2d Dist. Montgomery No. 21630, 2007-Ohio-431, ¶ 24 .

> "As the fact finder, the trial court determines the guardian ad litem's credibility and the weight to be given to the guardian ad litem's recommendation. Because assessment of the credibility and weight of the evidence is reserved for the trial court, we will not second guess the court's decision to disregard the guardian ad litem's recommendation."

*Cronin* at ¶ 27, quoting *Lumley* at ¶ 46, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997). The same assessment of the credibility and weight of the evidence applies to expert witnesses, including psychologists. *See Walton*, 2011-Ohio-2847, at ¶ 31, citing *DeHass*, 10 Ohio St.2d 230 and *In re R.N.*, 2004-Ohio-4420, at ¶ 55.

{¶64} The primary factor considered by the trial court in concluding that awarding Kinsey more parenting time would not be in R.S.'s best interest is the stress endured by R.S. during custody exchanges due to Kinsey and Jason's

animosity for one another and their inability to communicate. Despite Dr. Bromberg's and the GAL's recommendations that Kinsey be given more parenting time, we cannot find that the trial court abused its discretion with respect to those recommendations since both recognized Kinsey and Jason's inability to effectively communicate with one another and R.S.'s stress from Jason and Kinsey's animosity toward one another during exchanges. *See Walton* at ¶ 32. Therefore, the trial court did not abuse its discretion by ordering the trial court's standard parenting-time schedule.

{¶65} Based on the foregoing, Kinsey's first and second assignments of error are overruled.

**Assignment of Error No. III**

**The Trial Court Erred in Imputing Income, Failing to Award Spousal Support and Incorrectly Calculating Child Support.**

{¶66} In her third assignment of error, Kinsey argues that the trial court erred by ordering her to "pay guideline child support based on an imputed income, and failed refused [sic] to award spousal support, finding that [she] was underemployed in her current position at Der Dutchman restaurant and that she should be working full-time as an engineer." (Appellant's Brief at 23). She further argues that the trial court "erred in making support retroactive to the first trial date." (*Id.* at 24).

{¶67} It is well established that a trial court's decision regarding child-support obligations falls within the discretion of the trial court and will not be

disturbed absent a showing of an abuse of discretion. *Long v. Long*, 162 Ohio App. 3d 422, 2005-Ohio-4052, ¶ 8 (3d Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, (1989). As we noted above, an abuse of discretion suggests the trial court's decision is unreasonable or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶68} "Before computing child support, the trial court must determine each parent's income." *Clark v. Clark*, 3d Dist. Henry No. 7-15-09, 2015-Ohio-3818, ¶ 29, citing *Drummer v. Drummer*, 3d Dist. Putnam No. 12-11-10, 2012-Ohio-3064, ¶ 24, citing *Thacker v. Thacker*, 3d Dist. Marion No. 9-10-26, 2010-Ohio-5675, ¶ 55. "Where the calculation of child support involves a parent who is unemployed or underemployed, the trial court must consider the parent's gross income and, relevant to the instant case, the parent's potential income, R.C. 3119.01(C)(5)(b), which is income the parent would have earned if he or she had been fully employed." *Id.*, citing R.C. 3119.01(C)(11)(a). "In determining the parent's potential income and whether it may impute that income, the trial court must engage in a two-part analysis." *Id.*, citing *Theurer v. Foster-Theurer*, 12th Dist. Warren Nos. CA2008-06-074 and CA2008-06-083, 2009-Ohio-1457, ¶ 83, citing *Badovick v. Badovick*, 128 Ohio App.3d 18, 23 (8th Dist.1998). "First, the trial court must determine whether the parent is voluntarily unemployed or underemployed." *Id.*, citing *Theurer* at ¶ 83 and *Smart v. Smart*, 3d Dist. Shelby No. 17-07-10, 2008-Ohio-1996, ¶ 21. "If the trial court determines that the parent is voluntarily unemployed or

underemployed, then the potential income to be imputed to the parent must be determined in accordance with the factors enumerated under R.C. 3119.01(C)(11)(a)." *Id.*, citing *Theurer* at ¶ 83.

{¶69} R.C. 3119.01(C)(11)(a) provides:

(a)  Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:

(i)  The parent's prior employment experience;

(ii)  The parent's education;

(iii)  The parent's physical and mental disabilities, if any;

(iv)  The availability of employment in the geographic area in which the parent resides;

(v)  The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi)  The parent's special skills and training;

(vii)  Whether there is evidence that the parent has the ability to earn the imputed income;

(viii)  The age and special needs of the child for whom child support is being calculated under this section;

(ix)  The parent's increased earning capacity because of experience;

(x)  The parent's decreased earning capacity because of a felony

conviction;

(xi)  Any other relevant factor.

**{¶70}** As an initial matter, we note that Kinsey challenges only the trial

court's finding that she is voluntarily underemployed.  Kinsey does not challenge

the amount of imputed income.  As such, our review is limited to determining

whether the trial court abused its discretion in finding that Kinsey is voluntarily

underemployed. *See Drummer* at ¶ 25.

**{¶71}** The magistrate reviewed the R.C. 3119.01(C)(11)(a) factors and

imputed an income of $63,315.00 to Kinsey after concluding that she is voluntarily

underemployed.  In particular, the magistrate found that Kinsey earned $86,257.80

in 2011, her last full year of employment as an engineer with Honda.  The magistrate

further found that Kinsey's current income, based on a 40-hour work week, to be

$18,720.00.  However, the magistrate found her current income potential to be

$63,315.00 based on her vocational assessment.[4]  The magistrate found Jason's

income for child-support purposes to be $84,198.00.  In support of his conclusion

to impute income to Kinsey, the magistrate found that

---

[4] The trial transcript reflects that Kinsey stipulated to Joint Exhibit 4, the vocational-assessment report indicating that Kinsey's current income potential is $63,315.00. (Aug. 25, 2015 Tr., Vol. III, at 298-299). However, we note that the parties' exhibits admitted at trial are absent from the record on appeal apparently due to an error of the trial court's clerk. Nonetheless, there is evidence in the appellate record for us to properly determine the merits of the assignment of error. As such it is not necessary for us to order a correction of the record. *See In re Holmes*, 104 Ohio St.3d 664, 2004-Ohio-7109, ¶ 19.

it is undisputed that [Kinsey] left employment at Honda of America during 2012 at the insistence of the company. Thereafter, [Kinsey] went through her pregnancy and the birth of [R.S.]. After [R.S.] was born, she did not consider it to be in the child's best interest that she resume fulltime employment. Since this matter has been pending, [Kinsey] has been disingenuous and misleading with the court regarding her employment and job search. It is undisputed that the only employment [Kinsey] has accepted is her new job making donuts.

(Doc. Nos. 91, 97).

**{¶72}** Kinsey objected to the magistrate's decision regarding his child-support determination. (Doc. No. 108). In particular, Kinsey argued that the magistrate disregarding "Dr. Bromberg's testimony when he testified that [Kinsey] should seek a job that is not high stress, specifically a part-time job, with low stress and good supervision. (*Id*. at 31).

**{¶73}** In overruling Kinsey's objection to the magistrate's child-support determination, the trial court reviewed the record and the magistrate's findings and concluded that Kinsey is voluntarily unemployed and imputed $63,315.00 in income to her. (Doc. No. 114). The trial court notes, "when asked by the Magistrate what if any impact her psychopathology might have on [Kinsey's] ability to acquire

and maintain employment at her level of education and experience, Dr. Bromberg testified 'I think she is capable of doing that at this time. I do not feel that she is under a lot of stress. But I do think actually there may be some therapeutic benefit to her.'[5] (Doc. No. 114, quoting Aug. 24, 2015 Tr., Vol. II, at 246).

{¶74} Based on our review of the record, the trial court's decision is based on the relevant R.C. 3119.01(C)(11)(a) factors. We discussed Kinsey's education and employment experience in her first and second assignments of error. (Aug. 24, 2015 Tr., Vol. III, at 315-316); (Aug. 25, 2015 Tr., Vol. IV, at 501-502, 527). R.C. 3119.01(C)(11)(a)(i)-(ii), (vi), (ix). In particular, we noted that Kinsey testified that she rejected two jobs in her career field after R.S. was born, and that Kinsey offered disingenuous testimony regarding her job-search efforts despite the trial court's admonishment to her to seek employment. (Aug. 24, 2015 Tr., Vol. II, at 270-273); (Aug. 25, 2015 Tr., Vol. IV, at 507-508). Most pertinently, in light of that evidence, we addressed Kinsey's testimony regarding the employment she secured at Der Dutchmann at a rate of $9.00 per hour. (Doc. No. 76); (Aug. 25, 2015 Tr., Vol. IV, at 516-520, 524, 527).

{¶75} As Kinsey argued in her objection to the magistrate's decision, Kinsey argues that R.C. 3119.01(C)(11)(a)(iii) weighed against finding that she is voluntarily underemployed based on Dr. Bromberg's testimony. Yet, as discussed

---

[5] The trial court misquoted Dr. Bromberg's testimony. He testified, "I do feel that she is under a lot of stress." (Aug. 24, 2015 Tr., Vol. II, at 246).

by the trial court, Dr. Bromberg testified that Kinsey is able to secure employment commensurate with her education and experience and that such employment "may be therapeutic" for her. (Aug. 24, 2015 Tr., Vol. II, at 246).

**{¶76}** Accordingly, the trial court did not abuse its discretion by imputing income to Kinsey, in its child-support calculation, or by ordering Kinsey to pay child support. *See Clark*, 2015-Ohio-3818, at ¶ 34.

**{¶77}** Kinsey further argues in her third assignment of error that the trial court erred by not awarding her spousal support. As with child-support awards, "trial courts are granted broad discretion concerning awards of spousal support," which "will not be reversed on appeal absent an abuse of that discretion." *Roychoudhury v. Roychoudhury*, 3d Dist. Union No. 14-14-19, 2015-Ohio-2213, ¶ 12, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). "[W]hen awarding spousal support, the 'trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case.'" *Id.*, quoting *Kunkle* at 67.

**{¶78}** "The award of spousal support is not based solely on the 'need' of the party, but on what is 'appropriate and reasonable' under the factors listed in R.C. 3105.18(C)(1)." *Id.* at ¶ 13, citing *Welch v. Welch*, 3d Dist. Union No. 14-14-05, 2015-Ohio-1595, ¶ 18. R.C. 3105.18(C) provides:

(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i)  The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j)  The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k)  The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l)  The tax consequences, for each party, of an award of spousal support;

(m)  The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n)  Any other factor that the court expressly finds to be relevant and equitable.

(2)  In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support,

each party shall be considered to have contributed equally to the production of marital income.

**{¶79}** Kinsey argues that the trial court abused its discretion by not awarding her spousal support based on "the parties' 10-year marriage and her need for support before she can effectively re-enter the workforce." (Appellant's Brief at 24). However, we conclude that the trial court did not abuse its discretion by not awarding Kinsey spousal support. The magistrate thoroughly analyzed and weighed the statutory factors in his decision and concluded that "an award of spousal support is not reasonable or appropriate." (Doc. Nos. 91, 97). In particular, the magistrate found:

(1)   In 2014, [Jason] had an earned income of $84,198.00. [Kinsey] has just started a new job making donuts earning $9.00 per hour. In that position, her potential annual income is approximately $18,720.00 based upon a 40-hour work week.

(2)   [Kinsey] was previously employed by Honda of America earning $86,257.80 her las [sic] full year of employment there in 2011. She was released in 2012 based [sic] performance evaluations not related to character. Based upon a vocational assessment. [sic] [Kinsey] has a present earning ability of $63,315.00, more or less. [Kinsey] has a stated intention of

maintaining her current job for 3 years until [R.S.] starts preschool, [Kinsey] is not seeking work consistent with her education and experience until that time. For the purpose of spousal support analysis, [Kinsey] is not working at her full potential.

(3) Both parties are in their early thirties. Neither party has any physical or mental health issues that prevent them from being employed; however, Dr. Bromberg, the psychologist evaluated both parties with respect to parenting [sic] opined that a lower stress job could be beneficial to [Kinsey].

(4) The parties have comparable retirement assets at present. [Jason's] retirement accounts can be expected to grow while [Kinsey] will not generate any significant growth in her retirement accounts by employer contributions in her new job.

(5) The parties have been married for 9 years – DOM: July 30, 2006.

(6) There is one toddler child. [Kinsey] argues that it is not in the child's best interest for [Kinsey] to maintain fulltime professional employment. According to [Kinsey], it is for the child's benefit for her to work-part time [sic] with a reduced earning ability until the child is in pre-school. [Kinsey] offered

no evidence in support of this position other than her own opinion.

(7) Both parties have college degrees as engineers. The marital standard of living was middle class-professional. Neither party contributed to the education of the other.

(8) Neither party is seeking additional education or training.

(*Id.*).

{¶80} In overruling Kinsey's objection to the magistrate's decision denying her request for spousal support, the trial court concluded that the magistrate "correctly considered each of the factors set forth in R.C. 3105.18" and that Kinsey "has the present ability to be self-supporting and provide herself with a comparable life style to that enjoyed prior to the divorce." (Doc. No. 114).

{¶81} Based on our review of the record, the trial court considered the R.C. 3105.18 factors. The record further supports the trial court's findings that Kinsey voluntarily remains underemployed despite having a college degree, being in her thirties, and not having any physical or mental-health issues that would prevent her from being employed. *See Wagner v. Wagner*, 5th Dist. Stark No. 2004CA00037, 2005-Ohio-226, ¶ 42. Therefore, the trial court did not abuse its discretion by concluding that spousal support is not appropriate or reasonable in this case.

{¶82} Finally, Kinsey argues under her third assignment of error that the trial court "erred in making [child] support retroactive to the first trial date." (Appellant's Brief at 24). In support of that argument, Kinsey failed to cite any authority or to the record in support of her claim. "[A]n appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2): 'if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *Rodriguez v. Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 4, quoting App.R. 12(A); *Hawley v. Ritley*, 35 Ohio St.3d 157, 159 (1988).

{¶83} App.R. 16(A)(7) requires that Kinsey include in her brief: "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."

{¶84} "'It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error.'" *Rodriguez* at ¶ 7, quoting *State v. McGuire*, 12th Dist. Preble No. CA95-01-001, 1996 WL 174609, *14 (Apr. 15, 1996). "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *Id.*, citing *State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist.1998) and *McGuire* at *14.

{¶85} Because Kinsey failed to cite any legal authority or to the record in support of her argument, we decline to review it.

{¶86} For these reasons, Kinsey's third assignment of error is overruled.

### Assignment of Error No. IV

### The Trial Court Erred in Failing to Equitably Divide All of the Parties' Assets and Liabilities.

{¶87} In her fourth assignment of error, Kinsey argues that the trial court failed to equitably divide the parties' assets and liabilities. Specifically, Kinsey argues that the trial court "awarded all of the contents to each party's home to that party despite the fact that many of [Kinsey's] personal items – including clothing, school papers and professional documents – are still located at the marital home where [Jason] resides." (Appellant's Brief at 24).

{¶88} Aside from a general reference to R.C. 3105.171, the statute governing the division of marital and separate property, Kinsey failed to cite any legal authority or any portion of the record in support of her argument. *See* App.R. 16(A)(7). Further, she makes *no* argument relative to how the trial court failed to divide the parties' liabilities. As such, we decline to review Kinsey's fourth assignment of error.

{¶89} Even if we were to consider her argument, Kinsey waived appellate review of her argument. *See Richardson v. Richardson*, 10th Dist. Franklin No. 01AP-1236, 2002-Ohio-4390, ¶ 46. Kinsey not only stipulated to the division of

the personal property to which she now complains, but Kinsey did not object to the magistrate's division of the household goods and furnishings, which would have presumably included the "personal" items Kinsey is now challenging—namely because the appraisal was performed at her request with respect to her terms. (*See* Aug. 25, 2015 Tr., Vol. IV, at 637-639); (Doc. No. 91, Ex. 1); (Doc. No. 108). Indeed, the magistrate noted in his decision, "By agreement of the parties, the parties are each allocated the household goods and furnishings set forth on Joint Exhibit 7 attached hereto and incorporated by reference as Exhibit 1." (Doc. No. 91). That exhibit reflects that it was a "personal property appraisal * * * performed at the request and on the terms of [Kinsey's] counsel." (Doc. No. 91, Ex. 1). At the hearing, the parties stipulated as to the division of their personal property—that is, they stipulated as to what personal property is separate and what personal property is marital as well as to that property's equitable division. (Aug. 25, 2015 Tr., Vol. IV, at 637-639); (Doc. No. 91, Ex. 1). That stipulation was filed in writing and signed by the parties and their attorneys. (Doc. No. 91, Ex. 1). *See Tisci v. Smith*, 3d Dist. Hancock No. 5-15-30, 2016-Ohio-635, ¶ 24 (discussing the binding effect of a stipulation on the parties). Accordingly, Kinsey waived her argument. *See Richardson* at ¶ 46 (concluding that parties' stipulation to the value of the marital property waived that issue for appeal).

{¶90} Kinsey's fourth assignment of error is overruled.

{¶91} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and ROGERS, J., concur.**

**/jlr**