[Cite as *Adante v. Adante*, 2024-Ohio-5371.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| MARCIE ADANTE, | CASE NO. 2024-G-0003 |
| Plaintiff-Appellee/<br>Cross-Appellant, | |
| | Civil Appeal from the<br>Court of Common Pleas |
| - vs - | |
| RICHARD ADANTE, | Trial Court No. 2019 DC 000440 |
| Defendant-Appellant/<br>Cross-Appellee. | |

## O P I N I O N

Decided: November 12, 2024
Judgment: Affirmed in part, reversed in part, and remanded

*Joseph G. Stafford* and *Kelley R. Tauring*, Stafford Law Co., L.P.A., North Point Tower, 1001 Lakeside Avenue, Suite 1300, Cleveland, OH 44114 (For Plaintiff-Appellee/Cross-Appellant).

*Scott S. Rosenthal* and *Alarra S. Jordan*, Rosenthal Lane, LLC, North Point Tower, 1001 Lakeside Avenue, Suite 1720, Cleveland, OH 44114 (For Defendant-Appellant/Cross-Appellee).

MATT LYNCH, J.

{¶1} Appellant/cross-appellee, Richard Adante, and appellee/cross-appellant, Marcie Adante, appeal the decree of divorce issued by the Geauga County Court of Common Pleas with respect to spousal and child support, shared parenting, disposition of the marital residence, and attorney fees. For the following reasons, we affirm in part, reverse in part, and remand the judgment of the court below.

{¶2} On May 23, 2019, Marcie filed a Complaint for Divorce against Richard. On June 10, 2019, Richard filed an Answer and Counterclaim.

{¶3} The matter was tried before magistrates on June 15 and 16, 2020; January 25, 26, and July 7, 2021; and March 17, 18, and November 8, 2022.

{¶4} On July 21, 2023, Findings of Fact, Conclusions of Law, and Magistrate's Decision was issued. Both parties duly filed objections to the Magistrate's Decision.

{¶5} On December 19, 2023, the trial court ruled that Richard's objections were not well taken and that Marcie's objections were well taken in part. The court approved and adopted the Magistrate's Decision with certain changes/corrections. The parties were granted divorce on the grounds of incompatibility. The duration of the marriage was determined to be from July 18, 1999, to November 8, 2022. Two children were born as issue of the marriage, but only one remained a minor (age 16 as of November 8, 2022).

{¶6} On January 17, 2024, Richard filed a Notice of Appeal. On appeal, he raises the following assignments of error:

> [1.] The trial court erred in finding that an award of spousal support to Appellee was equitable and appropriate, under the facts and circumstances of this case.
>
> [2.] The trial court erred in delaying the sale of the marital residence until June 2025.
>
> [3.] The trial court erred in ordering Appellant to pay $5,000 of Appellee's attorney fees.

{¶7} On January 24, 2024, Marcie filed a Notice of Cross-Appeal. On cross-appeal, she raises the following assignments of error:

> [1.] The trial court erred as a matter of law and abused its discretion by ordering the marital residence to be sold and in failing to award the appellee/cross-appellant a distributive award.
>
> [2.] The trial court erred as a matter of law and abused its discretion in determining the appellant/cross-appellee's child support and spousal support obligations.

2

[3.] The trial court erred as a matter of law and abused its discretion by ordering shared parenting concerning the minor child.

[4.] The trial court erred as a matter of law and abused its discretion by failing to award the appellee/cross-appellant her attorney fees and litigation expenses.

{¶8} The assignments of error, both on appeal and cross-appeal, will be addressed in a consolidated fashion for the sake of economy and clarity.

{¶9} Richard's first assignment of error and Marcie's second assignment of error concern the award of spousal and child support. A trial court's decision regarding support, whether spousal or child support, is reviewed for abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989) ("[s]ince it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case …, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment"); *Ruff v. Ruff*, 2023-Ohio-2349, ¶ 55 (11th Dist.).

{¶10} Child support was calculated according to the support worksheet based on annual income figures of $31,200.00 for Marcie and $192,030.00 for Richard. Based on the child support computation, Richard was ordered to pay support (child support and cash medical support) in the amount of $1,158.00 per month or $13,896.00 per year commencing January 1, 2024. For spousal support, Richard was ordered to pay $3,000.00 per month in addition to the mortgage, real estate taxes and insurance on the marital residence (approximately $2,088.00 per month) commencing January 1, 2024. Upon the sale of the marital residence, spousal support would increase to $5,000.00 per month until December 31, 2029 (unless terminated by death or remarriage).

3

{¶11} The trial court's support orders were based on the following findings of fact contained in the Magistrate's Decision.

> 31. Marci[e] is age 52. She described her health as "fair" in her Affidavit of Income and Expenses filed November 3, 2022. She obtained a B.S. degree from Ohio Northern University in 1995 and shortly thereafter obtained a pharmacy license.
>
> 32. Marci[e] was previously employed as a pharmacist and has continued to maintain her state licensure as a pharmacist.
>
> 33. She left her employment in this field in 2018 upon the family's relocating from Columbus to Cleveland based upon a decision to serve as a homemaker and care for their children. However, the parties' eldest child … is now emancipated and is attending college while their minor child … is a teenager and attends Kenston High School and can thus attend to her own personal needs and responsibilities after school.
>
> 34. In the five years before 2018, Marci[e]'s earnings exceeded $100,000.00 annually while employed as a pharmacist or in a related position. While employed, she received retirement benefits that comprise her present 401(k) account.
>
> 35. Marci[e] is presently employed at Amazon working part-time (20 hours per week). Marci[e] commenced her employment in 2021 and works in the distribution area. She is paid $15 per hour and testified that she has been offered full-time employment at Amazon. Her total income for 2022 was $16,216.20 through October 2022 according to her Affidavit of Income and Expenses. However, full time employment at Amazon, 40 hours per week, at $15 per hour for 52 weeks, results in Marci[e]'s present annual income being $2,600.00 per month or **$31,200.00** per year.
>
> 36. According to Marci[e], she was unemployed at the outset of this case in May 2019, due to previous health concerns including hypertension, headaches, stress, and several gastrointestinal maladies, and received intensive outpatient therapy / counseling via Zoom from Highland Springs for a 9 week period in 2020. Marci[e] is currently taking Prozac, prescribed after she filed for divorce to treat anxiety and depression.
>
> 37. Marci[e] did not present any testimony from any past or present health care provider(s) including her counselor, Dr. Karen Bardenstein, to prove a disability or that her previous health issues

4

would preclude her from working full time. Based upon her recent employment at Amazon beginning in 2021, Marci[e] had demonstrated the desire, ability, and experience to do the work at Amazon on a full-time basis in order to help support herself.

38. Richard is age 47 and in good health. He has a B.S. from Ohio Northern in 1998 and an M.B.A. from Franklin University in 2003.

39. Richard is employed as a Vice-President with Marous Brothers and presently earns approximately **$162,200 per year in salary plus a $30,000 bonus**. Richard commenced his employment in April 2021. Richard's 2021 bonus was paid to him in 2022 and, according to Richard, 50% of the net (after-tax) amount was shared with Marci[e]. This fact was not refuted.

40. Richard was previously employed as a Vice President at PIRHL beginning in 2018. His income from employment at PIRHL and other sources approximated $200,000 each of the three previous years ($216,000.00 in 2019, $196,414.00 in 2020 and $191,261.00 in 2021). Richard's 2021 income from PIRHL included consulting income or a bonus of $30,000 paid in 2021 but earned in 2020), and $24,000.00 in consulting income or a bonus paid in 2022 but earned in 2021. While employed at PIRHL Richard received retirement benefits that comprise his present IRA.

41. According to Richard, 50% of the net (after-tax) consulting income or bonus received by him from PIRHL in both 2021 and 2022, was shared with Marci[e] pursuant to the parties' Agreed Judgment Entry filed January 25, 2021, as it represented funds due Richard from PIRHL per his Termination Agreement with PIRHL. These facts were not refuted.

…

45. During this case, Richard failed to timely apprise Marci[e] of his termination from his employment at PIRHL, his securing new employment at Marous or the nature and extent of his new income at Marous in his Affidavit of Income and Expenses filed with the Court of February 9, 2022. Marci[e] necessarily conducted additional discovery and additional cross-examination at Trial to verify the circumstances of Richard's termination from PIRHL and his current compensation at Marous.

…

5

Case No. 2024-G-0003

47. It is appropriate for purposes of calculating an appropriate amount of child support and cash medical support, to utilize Richard's present annual income at Marous, **$192,030.00** ($162,030 salary + $30,000 bonus) and Marci[e]'s present annual imputed full-time income at Amazon, **$31,200.00**.

{¶12} With respect to the income figures underlying the support calculations, Richard argues that the trial court erred in determining Marcie's imputed income to be $31,200.00 when she is voluntarily underemployed and has the ability to earn over $100,000.00 per year as a pharmacist. Conversely, Marcie argues that the court erred in imputing any income to her in light of her health conditions.

{¶13} "To calculate the amount of child support owed, the domestic-relations court must first determine the annual income of each parent." *Ayers v. Ayers*, 2024-Ohio-1833, ¶ 13, citing R.C. 3119.021(A). "For a parent who is employed to full capacity," "income" is defined as "the gross income of the parent." R.C. 3119.01(C)(10)(a). "For a parent who is unemployed or underemployed," "income" is defined as "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(10)(b). "[F]or a parent who the court pursuant to a court support order … determines is voluntarily unemployed or underemployed," "potential income" means "[i]mputed income that the court … determines the parent would have earned if fully employed as determined from the following [non-exhaustive] criteria: (i) The parent's prior employment experience; (ii) The parent's education; (iii) The parent's physical and mental disabilities, if any; … (vi) The parent's special skills and training; [and] (vii) Whether there is evidence that the parent has the ability to earn the imputed income …" R.C. 3119.01(C)(18)(a). Whether a parent is voluntarily unemployed or underemployed and the amount of potential income to be imputed to such a parent for the purposes of calculating support "are matters to be

6

determined by the trial court based upon the facts and circumstances of each case." *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), syllabus.

{¶14} We find no abuse of discretion in the trial court's determination that Marcie is voluntarily underemployed or in the amount of potential income to be imputed. Richard is correct that Marcie is capable of earning over $100,000.00 per year working as a pharmacist. However, it is also true that Marcie suffers from depression and anxiety and testified that, during the course of these proceedings, she has been suicidal and confined in a psychiatric hospital. Richard counters that none of Marcie's mental health providers testified on her behalf. We note that, while there is no evidence corroborating Marcie's testimony regarding her mental condition, neither is there evidence refuting her testimony. Contrary to Marcie's position, there is no evidence that she is unable to be employed at full capacity. As remarked by the magistrate, Marcie has demonstrated the ability and desire to work full-time at Amazon. As to why she is not working as a pharmacist, Marcie testified as follows:

> Because the thought of hurting someone just because I need to work is just a little more than I can handle right now. You know, if I mess up someone's package and they get a package a day late, I'm okay with that. But if I hurt somebody or their child, I couldn't -- I don't think I could handle that right now.

{¶15} Richard cites *Sovern v. Sovern*, 2016-Ohio-7542 (3d Dist.), and *Justice v. Justice*, 2007-Ohio-5186 (12th Dist.), as examples of cases where income was imputed to a parent based on past employment despite the parent's current psychological and/or employment situation. These cases, however, stand for the proposition that a court may, in the exercise of its discretion, impute income based on prior employment history, not that a court is obligated to do so. Despite the fact that Marcie, like the parents in *Sovern*

7

and *Justice*, has previously earned significantly more than she presently earns, the factual circumstances of those cases are not comparable to the present circumstances. *See Sovern* at ¶ 73 (psychologist testified that full-time employment would have "therapeutic benefit" for the parent); *Justice* at ¶ 10 (parent determined that she was over-qualified for available positions). We also note that the award of spousal support is modifiable by the court "in the event of a change in circumstances." If Marcie recommenced work as a pharmacist, the amount of support could be reconsidered. Given that support determinations are dependent on the particular facts and circumstances of each case and with due regard for the deference to be afforded the trier of fact respecting the weight and credibility of testimony, we affirm the court's decision regarding Marcie's voluntary underemployment and imputed income. *In re Z.C.*, 2023-Ohio-4703, ¶ 14 (deference to the trier of fact in matters of weight and credibility premised on the trier of fact's ability to observe the witness' testimony directly).

{¶16} With regard to the award of spousal support, both parties contend that the award is unreasonable in light of the facts and circumstances of this case.

{¶17} "In divorce and legal separation proceedings …, the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(B). "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support …, the court shall consider all of the following factors: (a) The income of the parties …; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party

8

will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of the education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party …; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment …; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."  R.C. 3105.18(C)(1).

{¶18} "Sustenance alimony is based on need, and the trial court must have latitude to examine all the evidence before it awards an amount that is reasonable and equitable to both parties."  *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95 (1988); *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 69 (1990) ("[n]eed is '[a] relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it'") (citation omitted).  "In making a sustenance alimony award, the trial court must consider all the factors listed in R.C. 3105.18[C] and not base its determination upon any one of those factors taken in isolation."  *Kaechele* at paragraph one of the syllabus.  "In allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law."  *Id.* at paragraph two of the syllabus.

9

Case No. 2024-G-0003

{¶19} Richard argues that the award of spousal support is inequitable because, when combined with the award of child support, it comprises approximately two-thirds of his net monthly income. The trial court determined Richard's yearly income for child support purposes to be $192,030, representing a base salary of approximately $162,000 plus bonus compensation of approximately $30,000[1]. Considering Richard's gross income, $60,000 a year (or $5,000 a month) in spousal support represents approximately less than one-third of his income, whereas combined spousal and child support ($1,158 a month) of $73,896 represents between one-third and one-half of his gross income. To support his claim that support payments will consume over two-thirds of his income, Richard excludes any bonus compensation from his calculations and, based on a gross yearly income of $162,000, derives a net monthly income of $9,127.71. Combined spousal and child support in the amount of $6,158 represents, given Richard's adjustments, two-thirds of his net monthly income. Nevertheless, we do not find the award of spousal support to be an abuse of discretion.

{¶20} Richard's argument that bonus compensation should not be included when considering the reasonableness of the spousal support award is not persuasive. Richard asserts that he "received bonus income of $30,000 on only one (1) occasion." However, bonus compensation was a regular component of Richard's income during his employment with PIRHL and would, in Richard's own words, "presumably" continue to be a part of his income at Marous Brothers. He testified: "My work entitles me to … discretionary bonuses … based on company profitability and performance," such as upon

---

1. We note that the trial court determined Richard's gross income to be $192,030 while the magistrate determined it to be $192,200. The amount entered in the support worksheet for Richard's Total Annual Gross Income was an even $192,000.

10

completion of construction projects. We further note that Richard's income of about $192,000 at Marous Brothers is comparable to the income he was earning at PIRHL at the commencement of these proceedings ("$216,000.00 in 2019, $196,414.00 in 2020 and $191,261.00 in 2021"). Moreover, we do not find the inclusion of Richard's child support obligation in his estimation of the reasonableness of his spousal support obligation to be compelling. While consideration of child support is certainly a factor to be considered in fashioning an award of spousal support, see R.C. 3105.18(C)(1)(i), it is of a different nature from spousal support and not an intended supplement thereto. In the present case, the child support order is due to expire upon the child's graduation from high school in May 2025, and so will be in effect for less than a year and a half. When Richard's bonus compensation is included in his net monthly income and his child support obligation is left out of what properly constitutes his spousal support obligation, his spousal support obligation is less than half of his net monthly income.

{¶21} Richard also argues that the trial court erred in stating that the mortgage payment on the marital residence, which constitutes part of his spousal support payment until the sale of the residence, was "approximately $2,088.00 per month." Richard correctly points out that the figure of $2,088 is what Richard testified his monthly rent was while he lived outside of the marital residence. According to Richard's Affidavit of Property and Debt, the monthly mortgage payment is $2,470.41. Richard claims he is entitled to a reduction in his monthly spousal support obligation of $370.67 until the sale of the residence (when the obligation becomes an even $5,000). We do not find that the discrepancy in figures justifies a modification of the support order. The court's estimation of the monthly mortgage payment was only an approximation and not a definite figure on

11

Case No. 2024-G-0003

which the support calculation was based. In sum, we emphasize that "[t]he goal [of spousal support] is to reach an equitable result," and "[t]he method by which the goal is achieved cannot be reduced to a mathematical formula." *Kaechele*, 35 Ohio St.3d at 96. Here, we find the result equitable in light of the length of the marriage, the parties' incomes and relative earning capacities, their current physical, mental, and emotional well-being, and the standard of living enjoyed during the course of the marriage. The court's misstatement of the approximate mortgage payment does not alter the propriety of the award itself.

{¶22} Marcie argues that the trial court's decision to limit the payment of spousal support to a six-year period is an abuse of discretion in light of her medical conditions and Richard's disregard for her mental and physical health. We find neither contention sufficient reason to reverse the court's limitation on the duration of the support obligation. As noted above, while Marcie's medical condition merits consideration and may excuse her from having to find employment commensurate with her education and experience, there was no evidence that her conditions are permanent or an impediment to more gainful employment in the future.

{¶23} The Supreme Court of Ohio has indicated its preference that spousal support be awarded for limited periods of time: "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definite limit upon the parties' rights and responsibilities."

12

*Kunkle*, 51 Ohio St.3d 64, at paragraph one of the syllabus. None of these considerations compel an indefinite award in the present case. While the parties' marriage was of relatively long duration (23 years), at the time of the divorce neither party was approaching the age of retirement. During the marriage Marcie did have meaningful employment outside of the home and, despite her current medical conditions, has the ability to be self-supporting. Spousal support for a period of six years is a reasonable amount of time for Marcie to adjust her circumstances to the reality that the standard of living enjoyed during the course of the marriage has ended.

{¶24} Although we find no error with the award of spousal support or the imputation of income to Marcie for the purposes of child support, we note that the award of spousal support was not included as part of Marcie's annual gross income for the purposes of calculating child support. "Gross income" is defined for the purposes of calculating child support "spousal support actually received." R.C. 3119.01(C)(13). As reflected in the child support worksheet, Richard's income was duly adjusted for "Court Ordered spousal support" pursuant to R.C. 3119.05(B) but the award was not included in Marcie's income. *Doubler v. Doubler*, 2023-Ohio-393, ¶ 24 (9th Dist.) ("a trial court's failure to credit as income spousal support paid to an obligee … constitutes an error by the trial court"). Accordingly, the trial court is ordered on remand to recalculate the amount of support owed based on Marcie's gross income including spousal support actually received.

{¶25} Richard's first assignment of error is with merit to the extent indicated above and Marcie's second assignment of error is without merit.

13

Case No. 2024-G-0003

{¶26} Richard's second assignment of error and Marcie's first assignment of error both challenge the trial court's disposition of the marital residence.

{¶27} The trial court made the following disposition of the marital residence:

> 6. The parties' **marital residence** ("residence") shall be listed for sale on or before **June 30, 2025**, by a real estate agent mutually chosen by the parties, and marketed and sold *without delay*. Each party shall act in good faith to facilitate this sale including timely signing any necessary document, keeping the residence "broom clean," making it available for all showings, and reviewing any reasonable offer with the agent for acceptance in a timely manner. The net proceeds realized from the sale after payment of the mortgage, relator's fee, and other customary closing costs, shall be equally divided between the parties. Each party shall be responsible for 50% of any tax consequences resulting from said sale. Neither party shall be permitted to borrow against, encumber or further lien the property until the sale is concluded. Richard shall continue to pay the monthly mortgage, taxes, and home insurance (totaling approximately $2,000.00[2] per month) associated with the residence until the sale is concluded (as and for spousal support set forth below in ¶17).
>
> Marcie shall be responsible and pay all utilities and all repairs <$250 plus any upkeep at the residence until the sale is concluded. Richard and Marcie shall each be responsible and pay 50% of all necessary repairs >$250 until the sale is concluded; should either party advance such latter repair cost(s), he or she should be entitled to reimbursement for 50% of such cost(s) from the other party's share of the net proceeds at the time of sale.

{¶28} The magistrate made the following factual findings with respect to the marital residence:

> 22. The parties own **real estate** [in] Chagrin Falls, Ohio 44023, the marital residence. Although neither party offered an appraisal, both presented evidence via their Affidavits regarding its value. Marci[e]'s Affidavit of Property and Debt provides the residence has a present fair market value of $331,500.00 and is encumbered by a $273,306.50 mortgage held by Nationstar. Richard's Affidavit of Property and Debt provides the residence has a fair market value of $450,000 (EST) and is encumbered by a

---

2.. *See supra* at ¶ 21.

14

Case No. 2024-G-0003

$274,025.20 mortgage held by Nationstar. According to Richard's Affidavit of Basic Information, Income and Expenses filed on October 28, 2022, the monthly mortgage payment, including taxes and insurance, totals $2,088.00[3]. Neither party offered an updated mortgage statement indicating the present outstanding mortgage debt on the property.

{¶29} In divorce proceedings, "the court shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). Unless a distributive award is made, "the division of marital property shall be equal." R.C. 3105.171(C)(1). "If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." *Id.* "A Court of Common Pleas has broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph two of the syllabus. "Since a trial court has broad discretion in the allocation of marital assets, its judgment will not be disturbed absent an abuse of discretion." *Neville v. Neville*, 2003-Ohio-3624, ¶ 5.

{¶30} Richard argues that "the trial court erred and abused its discretion when it ordered the marital residence to be sold on June 30, 2025, a date that is over two and a half (2½) years after the final date of the parties' marriage." It is recognized that the date fixed by the court for listing the marital residence, June 2025, coincides with the expected graduation date of the parties' minor child, May 2025. Nevertheless, Richard maintains that "to rectify the trial court's error and reduce the amount of financial stress experienced by both parties from the costs and maintenance of the residence and to disentangle the parties, while also considering the parties' joint desire to minimize any change in the minor

---

3. *See supra* at ¶ 21.

Case No. 2024-G-0003

child's education, this Court should modify the date that the marital residence shall be listed for sale from June 30, 2025 to the earliest date that the marital residence can be sold without impacting the minor child's school placement."

{¶31} The Supreme Court of Ohio has long recognized that "finality and conclusion must be a priority" in domestic relations proceedings "so as to disentangle the affairs of the parties." *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 185 (1990). However, the court also recognized that finality in the dissolution of the parties' economic partnership would not always serve the "equity of the circumstances." "Certainly, some circumstances may warrant joint ownership after a divorce and situations may evolve where joint decisions must be made." *Id.* at 182-183. Similarly, the Revised Code provides that, "[i]n making a division of the marital property and in determining whether to make and the amount of any distributive award …, the court shall consider … [t]he desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage." R.C. 3105.171(F)(3). Again, the Code provides that, in the disposition of marital property, "[t]he court may issue any orders … that it determines equitable, including, … [a]n order granting a spouse the right to use the marital dwelling or any other marital property or separate property for any reasonable period of time." R.C. 3105.171(J)(1). Given the foregoing, we find nothing inherently improper about the trial court's order deferring the sale of the residence until (or before) June 2025.

{¶32} Richard cites the recent decision of the Eighth District in *Halton v. Halton*, 2024-Ohio-1165 (8th Dist.), for support. In *Halton*, as in the present case, the trial court "ordered the real property [the marital residence] to be sold once the minor children

16

graduate from high school" and "used the date of the future sale of the home as the date for dividing the remaining equity in the property." *Id.* at ¶ 14. It was noted that "the parties stipulated that the marital home had a fair market value of $425,000 and that there was a total debt of the property of $259,729.99, leaving the then equity in the home at $165,207.01."[4] *Id.* at ¶ 13. "The trial court ordered appellant to be responsible for all debt on the real property and allowed for satisfaction of the remaining debt from the eventual sale of [the] home, and the court required the remaining proceeds to be divided equally." *Id.* The court of appeals found that "the trial court abused its discretion by ordering an equal division to be determined at the time of the future sale of the marital home" because, "[a]s argued by appellant, the trial court effectively divided [her] post-marital property rights." *Id.* at ¶ 13-14. The court of appeals did not elaborate as to how the appellant's post-marital rights were being divided. It appears that, since the appellant was the party responsible for all debt on the real property *post-decree*, it would be improper to evenly divide any increase in the equity of the property *post-decree*. However, this is not expressly stated in the court's opinion.

{¶33} We do not find *Halton* applicable in the present circumstances. Aside from the lack of firm evidence or agreement as to what the actual equity in the marital residence was at the termination of the marriage, Richard was the party responsible for paying the mortgage as part of his spousal support obligation. In contrast to *Halton* where the party responsible for paying the mortgage debt paid with her own funds after the divorce,

---

4. By contrast in the present case, the parties gave widely divergent estimates of the property's fair market value ($331,500.00 and $450,000.00) and substantially similar figures for the outstanding mortgage debt ($273,306.05 and $274,024.20). No professional appraisal of the property's value or current mortgage statements were proffered.

Case No. 2024-G-0003

Richard is financing the debt with funds owed to Marcie awarded (as spousal support) by the decree of divorce. This is actually to Richard's benefit. He will share in any increase in the equity of the residence as a result of the mortgage payments made as spousal support. In effect, he will receive a partial reimbursement for the money paid as spousal support when the residence is sold inasmuch as those payments increased the equity in the property.

{¶34} Marcie argues that she should have been awarded the marital residence in addition to a distributive award of at least $234,000.00 in light of "Richard's admitted financial misconduct and his obvious attempts to conceal his true income and assets at trial."

{¶35} "The court shall require each spouse to disclose in a full and complete manner all marital property, separate property, and other assets, debts, income, and expenses of the spouse." R.C. 3105.171(E)(3). "If a spouse has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4). "If a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses as required under division (E)(3) of this section, the court may compensate the offended spouse with a distributive award or with a greater award of marital property not to exceed three times the value of the marital property, separate property, or other assets, income, or expenses that are not disclosed by the other spouse." R.C. 3105.171(E)(5). "While a trial court enjoys broad discretion in deciding whether to compensate one spouse for the financial

18

misconduct of the other, the initial finding of financial misconduct must be supported by the manifest weight of the evidence." *Calkins v. Calkins*, 2016-Ohio-1297, ¶ 17 (11th Dist.).

{¶36} Neither the trial court nor the magistrate made any finding of financial misconduct or concealment of assets by Richard with the exception of his failure to timely advise Marcie of his change of employment which will be discussed below. Nonetheless, Marcie maintains that a distributive award was merited given the following misconduct: "Richard improperly withdrew restrained funds from the children's accounts, dissipated marital income and assets on his paramours …, transferred $10,000.00 from the marital accounts to his individual account to prevent Marcie's access to funds, and gambled away marital funds. Richard admittedly failed to disclose $78,000.00 in concealed income and bonuses in 2021, and further continued to withdraw $250.00 per week from marital assets to use as 'spending money'"; also, "Richard intentionally did not disclose that he placed the marital residence into a forbearance program in order to retain the savings from not paying the mortgage of $20,000.00."

{¶37} We do not find that the trial court abused its discretion by awarding Marcie the marital residence and/or making a further distributive award. Certainly, Richard admitted to adultery and expended funds during the course of the marriage in furtherance of such relationships. It has not been shown that these expenditures compromised the marital estate to a significant degree. In general, these expenditures were typical dining and entertainment expenditures. With respect to his gambling activity, Richard testified that Marcie was aware of it and that losses did not usually exceed a hundred dollars. It was revealed during trial that Richard was receiving consulting fees which were not

19

reported on the affidavit filed earlier with the court. Ultimately, the parties agreed that these fees would be evenly divided between them. With respect to funds transferred from marital as well as the minor child's accounts, Richard testified that these funds were used for home and vehicle expenses. Likewise, Richard testified that the extra money available during the mortgage forbearance (at which time he was unemployed) was used for necessary expenses. Of course, the credibility of Richard's testimony as to these matters may be doubted, but that was a matter for the trier of fact which, in this case, decided against finding financial misconduct sufficient to justify a distributive award. We defer to the lower court's judgment in the exercise of its discretion.

{¶38} Richard's second assignment of error and Marcie's first assignment of error are without merit.

{¶39} In Marcie's third assignment of error, she challenges the trial court's adoption of Richard's Amended Shared Parenting Plan whereby both parties are designated residential and custodial parents of the minor child although the child will reside primarily with Marcie who is further designated the child's residential parent and legal custodian for school purposes. The court ordered that "Richard should have parenting time with [the child] as he and [the child] shall determine which at a minimum shall be not less than the Geauga County Standard Parenting Time Schedule" and that "parenting time should be coordinated with Marci[e]."

{¶40} The magistrate made the following findings regarding parental rights and responsibilities:

> 9. The minor child … resides primarily with Marci[e] at the marital residence and has done so since the parties' separation. Richard schedules parenting time directly with [the child] usually by text, without any interference from Marci[e]. Since separation, Richard

20

and [the child] spend time together on a semi-regular basis as, according to Richard, he is flexible and understanding that [she] is involved in high school/activities/friends which often take precedence over scheduled father/daughter time. [The child's] activities have included out-of-town volleyball tournaments to which Richard regularly took [her].

10. Richard seeks "shared parenting" of [the child] consistent with the terms of his Amended Shared Parenting Plan ("SPP"), filed June 12, 2020. He recognizes that [the child] resides primarily with Marci[e] but would like parenting time and a voice in her future decisions. Marci[e] did not file a Response or Alternate Shared Parenting Plan. In her Complaint, Marci[e] requested that she be designated the sole residential/custodial parent.

11. Marcie has been the parent primarily responsible for [the child's] day-to-day care relating to her school and health matters since the separation. She has appropriately facilitated Richard's ongoing father/daughter relationship with [the child] including access, communication, and parenting time.

12. With respect to future parenting time, Richard seeks time with [the child] during the midweek (Wednesday PM through Friday AM), alternate weekends, holidays and during her vacation periods.

13. Marci[e] is not opposed to Richard's proposed "standard" parenting time schedule which includes time during the week and on alternate weekends except for midweek *overnights* with [the child] which she felt might be disruptive.

14. Since separation, Marci[e] and Richard have cooperated in scheduling parenting time and all other aspects of [the child's] upbringing including education, health care and extra-curricular activities.

15. Richard is agreeable to Marci[e] remaining the Residential Parent of [the child] for School Purposes anticipating that [she] will matriculate at Kenston High School.

16. [The child] is a happy teenager, a good student, and is on track to graduate from high school in May 202[5]. [She] has friends and is actively engaged in extra-curricular activities of her choosing.

17. [The child] has a loving relationship with both Marci[e] and Richard. Both parties have demonstrated that they are committed to facilitating [her] relationship with the other parent.

21

Case No. 2024-G-0003

{¶41} Marcie contends that "[t]he trial court did not consider the evidence of Richard's lack of relationship with the minor child, his voluntary forfeiture of parenting time, or his disregard for the child's health." She notes that during the pendency of these proceedings Richard has failed to show interest in the child's education or participate in the child's mental and physical healthcare.

{¶42} "Either parent or both parents of any children may file a pleading or motion with the court requesting the court to grant both parents shared parental rights and responsibilities for the care of the children in a proceeding [pertaining to the allocation of parental rights and responsibilities for the care of a child]." R.C. 3109.04(G). "The approval of a plan … is discretionary with the court," and the court "shall not approve a plan … unless it determines that the plan is in the best interest of the children." R.C. 3109.04(D)(1)(b). "This court has emphasized the trial court's broad discretion in determinations involving shared parenting, even stating that we are guided by the presumption that the court's findings in such matters are correct." *Degrant v. Degrant*, 2020-Ohio-70, ¶ 44.

{¶43} Marcie's argument is that Richard's apathy toward the minor child, evidenced by his lack of relationship with the child, voluntary forfeiture of parenting time, and disregard for the child's health renders his request for shared parenting contrary to the child's best interests. We disagree. The magistrate noted that Marcie has been primarily responsible for decisions regarding the child's health and education and that Richard has adopted a flexible attitude toward his parenting time with the child. Even assuming, arguendo, that Marcie is correct about Richard's apathy toward the child, there is no evidence that this had a negative impact on the child or the parties' ability to jointly

22

and effectively parent the child. As noted by the magistrate, the parties have successfully cooperated in parenting the child throughout the course of these proceedings – a period of time, incidentally, which exceeds the period of time during which the Amended Shared Parenting Plan will be in effect.

{¶44} Marcie's third assignment of error is without merit.

{¶45} In Richard's third assignment of error and Marcie's fourth assignment of error, the parties challenge the trial court's judgment with respect to attorney fees and litigation expenses.

{¶46} The trial court ruled: "Each party shall be required to pay their own attorney fees and litigation costs, provided, however, Richard shall contribute the sum of $5,000.00 towards Marcie's attorney fees and litigation fees in view of the disparity in their incomes and Richard's failure to timely advise her and this Court of his change in employment during this case, that necessitated Marcie's confirmation of the terms of Richard's termination from PIRHL and of his compensation package at Marous Construction through additional discovery."

{¶47} The magistrate made the following factual findings regarding attorney fees:

> 57. The total attorney fees billed by counsel for the parties in this case, $145,183.65 [for Marcie] and $59,000.00 [for Richard], are grossly excessive and unreasonable by any measure in view of the limited nature and extent of the disputed issues in this case for the following reasons:
>
> A. The issue of **allocation of parental rights and responsibilities** was essentially agreed by the parties due to (i) the age of the minor child …; (ii) Richard's relationship with [her]; (iii) Marci[e]'s willingness to facilitate Richard's parenting time, and (iv) the parties' demonstrated ability since their separation to cooperate regarding all parenting matters. Richard filed a proposed Amended Shared Parenting Plan to which Marci[e] declined to oppose via any pleading.

23

Specifically, with respect to "legal custody" of the minor child, … the only disputed issue related to decision making. Marci[e] indicated that she should have ultimate decision-making responsibility as she had overseen and decided the major issues involving [the child's] education and health care since the parties' separation. With respect to the "physical custody," the only disputed issue related to mid-week overnights between Richard and [the child]. Marci[e] indicated she was opposed to Richard having overnight parenting time during the school week. Marci[e] did not express any objection to the terms of Richard's proposed shared parenting plan, essentially providing that [the child] continue to reside primarily with Marci[e] and Richard have parenting time as he and [the child] agree in the future, which arrangement had been in place since the parties' separation.

B. The issue of **property division (assets and debts)**, following the parties' stipulations … which divided their personal property and vehicles between them, was limited to … (i) the disposition and division of the marital residence, (ii) the division of their retirement benefits, and (iii) the allocation of the marital debts. The only evidence offered by the parties with respect to these assets and debts was their respective Affidavits of Assets and Debts, and outdated statements referring to the mortgage balance, retirement balance and credit card balances leaving this Court little choice but to (i) order the marital residence sold and the net proceeds to be divided in kind; (ii) order the parties' retirement assets to be divided in kind, and (iii) allocate the division of the joint marital credit card debts likewise in kind between the parties.

C. The remaining disputed issue was support, both **spousal support and child support**, was challenging and problematic due to Richard's change in employment during the pendency of the case, and Marci[e]'s recent re-entry into the work force. However, evidence relating to the parties' past and present incomes and expenses should have reasonably been presented in a single day.

These disputed issues relating to child custody and property division could have been reasonably and timely resolved by the parties and counsel leaving only the issue of support to be adjudicated at Trial.

58. However, instead of focusing their presentations over a period of 2-3 days total on the above limited, actual disputed issues,

24

Case No. 2024-G-0003

Richard's infidelity was unnecessarily spotlighted during the first 7 days of Trial. This evidence appeared solely intended to stoke the parties' emotions and was rendered irrelevant with respect to the issue of grounds in view of the parties' stipulation on the 8th day of Trial to terminate their marriage based upon incompatibility.

59. The performative tactics of counsel as well as their unavailability for scheduling unnecessarily elongated this proceeding to approximately 8 days over *three years*. The reasonable value of Marci[e]'s legal representation was $15,000.00; the reasonable value of Richard's legal representation was $10,000.00.

{¶48} "In an action for divorce, … a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). "Where a court is empowered to award attorney fees, an appellate court will not interfere with the decision '[u]nless the amount of fees determined is so high or so low as to shock the conscience[.]'" (Citation omitted.) *Degrant*, 2020-Ohio-70, at ¶ 86.

{¶49} Richard objects to being required to contribute $5,000 toward Marcie's attorney fees. He maintains that Marcie was timely advised of his change in employment and that there was no delay or additional expense as a result. He also objects to the finding that the reasonable value of his counsel's legal representation was $10,000. Rather, "[a]ny delay was solely the result of Appellee and her counsel, who made it difficult to settle this case and engaged in tactics only meant to delay the eventual outcome in the matter."

{¶50} On January 22, 2021, Marcie filed a Motion for Continuance of trial set for January 25 and 26. It was claimed that Richard had failed "to timely notify Counsel for

25

Case No. 2024-G-0003

the Plaintiff of his termination from his employer, PIRHL, LLC," and that it was "necessary to conduct additional discovery due to the Defendant's new discovered employment situation." The magistrate denied the Motion on the same day. Richard counters that his termination by PIRHL had only occurred January 18, 2021. On January 25, 2021, Richard provided Marcie and the magistrate documents regarding the termination of his employment. Moreover, on March 26, 2021, Richard filed Notice with the court that he had secured employment with Marous Brothers which was to begin on April 12, 2021.

{¶51} We find no abuse of discretion in the $5,000 award of attorney fees. These fees were awarded, in part, based on the disparity in the parties' incomes, a point which Richard does not address. As to the terms of Richard's termination from PIRHL, it does appear that the delay in notifying Marcie and/or the court entailed minimal, if any, expense or delay. The situation is different with respect to Marous Construction. Richard did advise Marcie of employment with Marous Construction prior to its inception date but did not fully disclose the details of his compensation package, specifically bonus compensation. As a result, Marcie filed a Motion for a Temporary Restraining Order and Motion to Add a New Party Defendant (Marous Construction) on March 17, 2022, both of which were granted by the magistrate. We further note that Richard failed to timely disclose an agreement with PIRHL in September 2021 whereby he earned consulting fees despite the termination in employment. With regard to the lower court's estimation of the value of counsel's legal representation, this has no apparent relevance or connection with the award of attorney fees to Marcie. Considering the foregoing record, an award of partial attorney fees was not improper.

26

{¶52} Marcie argues that the trial court abused its discretion by not awarding one hundred percent of her attorney fees and litigation expenses. She argues that, unlike herself, "Richard was able to pay his attorney fees and litigation expenses through the pendency of the case," and that "[i]t is inequitable to leave Marcie without the ability to pay her attorney fees and litigation expenses incurred in conducting necessary discovery, pursuing her claims, and attempting to enter good faith settlement negotiations with Richard to no avail." We disagree. As noted by Richard, "attorney fees are primarily the responsibility of the party who retains the attorney." *Smith v. Smith*, 2022-Ohio-299, ¶ 99 (8th Dist.); *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, ¶ 9 ("Ohio courts generally follow the 'American rule' with respect to attorney fees: each party is responsible for its attorney fees"). Given the circumstances of the present case, an award of $5,000 is neither so high nor so low as to shock the conscience.

{¶53} Richard's third assignment of error and Marcie's fourth assignment of error are without merit.

{¶54} For the foregoing reasons, the decree of divorce issued by the Geauga County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs to be taxed equally between the parties.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

27

Case No. 2024-G-0003